Alex. W. Campbell, Sp. J.,
delivered the opinion of the Court.
*692 L. P. C. Burford, complainant's intestate, recovered a judgment at the September Term, 1860, of the Circuit Court of Shelby county, against the Memphis. Bulletin Company, Joseph B. Mosby, Samuel Bond, and David C. Cross, upon a note executed by the Memphis Bulletin Company as principal, and the others as endorsers.
Several executions were issued upon the judgment, but what was done under them does not appear, except that the alias fi. fa. was issued November the 19th, 1860, and was levied upon certain real estate, as the property of the defendant Cross, which was sold and the proceeds applied to the payment of costs.
On the 7th of March, 1862, the defendant, Joseph R. Mosby, paid to the Clerk'of the Court two thousand three hundred and sixty-jhe dollars, ($2,365), in satisfaction of the judgment and interest thereon; whereupon the Clerk made the following entry on the execution docket:
“This judgment is satisfied to me by J. B. Mosby, March 7th, 1862, and money paid J. H. Unthank at the Fair Grounds.
(Signed) M. D. L. Stewart."
The defendant, Stewart, was the Clerk of the Court; Unthank, who was dead at the time the bill was filed in this cause, was the Attorney of record for the plaintiff, in procuring the judgment in the Circuit Court.
Complainant' filed the bill in this cause on the 18th of September, 1866, against the defendants in the Circuit ' Court judgment, except Bond, who was dead, *693 together with M. D. L. Stewart, the. Clerk, praying that the satisfaction of the judgment be set aside, or, that- a decree, be, rendered here for the recovery of 'the money remaining unpaid on the judgment; and for, such relief against the defendant Stewart as it may appear, to the Court, the facts alleged in the bill entitle, him to.
The principal, ground for relief alleged in the bill is, that the payment by Mosby to the Clerk and by 'him paid over to the Attorney of plaintiff, was made in, “Confederate, money," which was not only worthless, but was issued and circulated for an unlawful purpose.
The pleadings, and proof in the, c.ause render it at ¡least doubtful, whether the payment was made in Confederate money, or made in Southern Bank notes, or partly in both. The proof also shows that both kinds of currency were then current, but at considerable discount, compared with gold and silver.
It is insisted for the complainant, that when it is "made to appear that the Clerk received anything but gold and silver or currency convertible into coin at par, it was no satisfaction of the judgment, unless the plaintiff authorized payment in depreciated currency, or 'ratified it afterwards. That proof of payment to his Attorney, and the Attorney’s acceptance, is not suffi-cient proof of ratification. In other words, that in such cases the principal is not bound by the act, of the agent, unless the latter had special authority to receive depreciated currency, or ratified the act afterwards — either by receiving it from his agent, or ‘by some other positive act on his part.
*694 By the Act of 1806, ch. 66, sec. 9, which is carried into the Code by Sec. 4050, the Clerk was authorized to receive payment of judgments either before or after execution.
Payment to him operates to discharge the judgment. But the payment must be in money, — a payment in-salt, wheat, choses in action, or anything but money, is no satisfaction. Nor can the agent or Attorney of the plaintiff receive anything but money, without authority from him to do so.
The question then arises, What is money? This Court, in the case of Crutchfield v. Robbins, 5 Hum., 15, said, that “money is a generic term, and covers everything which by consent is made to represent property, and passes as such currently from hand to hand, whether it be the iron of the Spdrtans, the cowry of the African,, the gold and silver of the World, or the paper of modern Ewope and America.” So far then as the payment was made in current Southern Bank notes, there can be no question at this day in our own State, as to the authority of the Clerk to receive it. It is. true he might have refused to receive anything but gold and silver at the time; but having received the Bank notes, it was, in the absence of instructions from the -plaintiff to the contrary, a satisfaction of the-judgment.
The proof shows, that at the time this payment-was made, Confederate money had a very general circulation as currency. At Memphis, when this transaction occurred, it was the chief currency. The Banks, received it, and paid it out to their customers; com-- *695 merce and trade were carried on with it as a circulating medium. In the language of Judge Turley, in the case in 5th Humphreys, before referred to, it “passed currently from hand to hand.” It therefore was money. But it is insisted that it was not convertible into gold and silver at par, and therefore was-not such money as the Clerk was authorized by law to receive. Neither were the Banh notes, nor were-United -States legal tender or National Banh notes, which shortly after that displaced all other kinds of currency,, convertible into coin at par. If the convertibility of the paper at par be the test of the authority of a Sheriff or Clerk to receive currency in payment of a. judgment or execution, then it would follow, that a payment in the notes of any .of the old Banks, when they constituted the chief currency of' the country, or at a later day, in National Banh notes, when they were only worth forty cents in the dollar, would be no satisfaction, without express authority to receive it, or a subsequent ratification by the plaintiff. We are-to look at things as they existed in March, 1862, not as they are now, or were at the time the bill was filed. At that time an almost unbroken chain of victories had attended the arms of the Confederacy. The hopes and confidence of the people in a successful termination of the War, was unabated. Its Securities-were negotiable at home and abroad. Its Treasury notes became the almost universal medium of commerce and trade among the people, and possessed all the elements of money as defined by our Courts. If it were conceded that nothing is money but that which may *696 be converted into gold or silver at par, then no paper currency is money. Under the old banJcing system, for every dollar in coin owned by the Bank, from three to five dollars in notes were put in circulation, so that the paper dollar only represented from twenty to thirty-three cents in gold. It was not the representative value of the Bank note alone, that gave it currency, but the credit given to the Bank growing out of the confidence of the public in the successful management of its affairs. This confidence gave a value to the Bank note, frequently far beyond the constituent represented by it, and made it convertible into gold and silver at values proportioned to the public faith. Thus it was Confederate money acquired a circulation, not upon the representative value of it, but growing out of the confidence the people had in the ultimate establishment of a permanent government. It became money in a commercial and legal sense,— as much so as Bank notes, or any other paper currency.
But it is insisted that though a payment of such money to a Sheriff with an execution in his hands may be good, because he is the agent of the plaintiff; yet it is different in the case of a payment to a Clerk, because he is the agent of the judgment debtor until the money is received by the plaintiff. To this position we can not assent. They are both Officers of the Court. Their duties are prescribed by law; arid in the exercise of the ordinary functions of their offices, they are no more the agents of one party than they are of the other.
*697 We are therefore of tbe opinion, that whether the payment was made to the Clerk in current JBcmk notes or in Confederate money, if made and received in good faith, and without fraud, it was a satisfaction and discharge of the judgment. As there is nothing in the record indicating fraud on the part of either of the parties, the decree of the Chancellor will be affirmed, the bill dismissed, and the complainant required to pay all costs.

See: Morris v. Morris, post, 814.